to be seated. Could the clerk called the case, please? Miss Fagerman. Good afternoon. Good afternoon. My name is Allison Fagerman and I represent the appellant Brian Anderson. The gist of the of the case before your honors is this. Whether or not the motion for expert filed by the state agreed to by initial trial counsel was, in fact, a substantive hearing. As this court is aware, on March 24th, 2010, the state, by the Attorney General's office, filed a motion for expert asking that a Dr. Paul Heaton be appointed to evaluate the respondent to determine whether or not he meets the statutory criteria for the trial. Under the Sexually Violent Persons Act. That motion, as this court is aware, was agreed to by initial trial counsel, the order specifically indicating that the respondent's presence was waived. There is no factual issue in this case with regard to whether the respondent actually was aware of that motion for expert. There is no factual issue as to whether or not his initial trial counsel discussed with him prior to that motion being entered. That, in fact, counsel was going to agree to the motion, which again, allowed the state to have the expert of their choosing evaluate the respondent for purposes of determining whether or not he meets the criteria under the statute. I will address two of the three arguments that are contained in my brief, focusing primarily on arguments one and two. Arguments one, as this court is aware, focuses on the trial court area. Argument two focuses on initial trial counsel's ineffective assistance of counsel. Again, it's based off the same issue that I just described. The statute does not define the term hearing. Under 725 ILCS 207-5, hearing is not defined. Under 725 ILCS 207-25, therein lies what's entitled rights of the person subject to the petition. It is described by the plain language of the Act that the respondent, with the exception of those hearings described under 65B and 70 of the Act, which are discharge proceedings. This is initial. Bryan Anderson at the time, on March 24, 2010, still had not been adjudicated a sexually violent person. So with the exceptions of those two described discharge proceedings, Bryan Anderson, by the plain language of the statute, had the absolute right to attend the March 24, 2010 hearing. Was it a hearing? The state argues that in fact it was not a hearing. It was pro forma. Nothing substantive really took place. My response to that, Your Honor, is this. What could be more substantive than having the state handpick, with not just handpick, having them retained, meaning costs paid by the state, to evaluate the respondent to determine whether or not, A, he was convicted of a sexually violent offense, B, whether or not he's dangerous because he suffers from a mental disorder, and lastly, whether it is substantially probable that he will engage in acts of sexual violence in the future. That is what the trial is all about. There is no other issue at trial. And so the argument, Your Honor, is by the state that nothing substantive happened. And the findings by the trial court that it was just, the trial court said clearly this is a hearing, but it's just discovery. Nothing substantive. That cannot be correct. Because it wasn't just an order, it wasn't just a motion for discovery, meaning of something that already existed. It was a motion and an agreed order for new discovery. Because the state was requesting that Brian Anderson be personally evaluated by Dr. Heaton. And that Dr. Heaton have access to Mr. Anderson's treatment records and treatment providers for determining whether or not he is a sexually violent person. The case law on point, and I'll point the court to three different cases. As I outlined in my brief, in-ring detention of Erb, E-R-B-E, that case dealt with an allegation by the respondent subject to the sexually violent person's proceedings that when his counsel, after having been appointed just prior to the probable cause hearing, when his counsel had agreed with the Attorney General's office to continue the probable cause hearing for one week, he argued that that was a hearing under the Act that he was entitled to be present for. The distinction between our case and that case, Your Honors, is this. Ultimately, that probable cause hearing took place. That probable cause hearing took place by statute under 207-30B of the Act, which describes the probable cause proceedings. Upon the respondent's motion, the court came with good cause, granted seven-day continuance. And that's all that happened. That probable cause hearing took place. That respondent got to come to court, got to listen to the state's witness testify about the different statutory factors that the state had to prove at that hearing, had to prove probable cause. I submit to this court this proposition. The injustice that was done to Bryan Anderson was even, it is beyond the realm of what he alleged in that case of just a simple motion to continue with the probable cause hearing that he ultimately got to attend. In this case, Bryan Anderson wasn't even aware that there was a motion for an expert. Bryan Anderson first learned that the state was allowed their motion for expert when Dr. Heaton showed up at the Department of Human Services and said, Hi, I'm Dr. Heaton. Will you submit to an evaluation? And as this court is aware, at that time, as of March 24, 2010, the Department of Corrections doctor, Dr. John Arroyo, had found that Bryan Anderson met the criteria under the statute. That was the doctor who, pursuant to Section 207-15 of the Act, evaluated the respondent, determined to a reasonable degree of psychological certainty that he met the criteria. After the probable cause hearing, the court ordered that he submit to an evaluation by DHS, pursuant to 30C of the Act. He submitted to that evaluation, and the Department of Human Services doctor found that he did not meet the statutory criteria. This court is aware, with respect to my argument too, this court is well aware that we must show that initial trial counsel's conduct fell below an objective standard of reasonableness. And not just that, but this court is aware that we also must demonstrate a reasonable probability that, but for that deficiency, the trial outcome would be different. I've indicated already to the court how it was that initial trial counsel would agree to that order. His conduct fell below an objective standard of reasonableness. Because, according to initial trial counsel, William McNeil, his rationale for agreeing to this order was that, one, it was Bryan Anderson's straightforward cooperation with the Department of Human Services doctor, his participating in that interview, that led to a favorable opinion. If that were the case, then why didn't he talk to Bryan Anderson prior to agreeing to that order? Because had he done so, Bryan Anderson would have told him, as he said to the trial judge on our motion to bar testimony, he would have told him, I'm not going to participate. And if he told him, I'm not going to participate, there is no reasonable explanation for agreeing to the order, which then would only become a records review by Dr. Heaton. In Mr. McNeil's affidavit, part of the record in this case, which is referenced in my reading, he indicates, in fact, that the first that he told Bryan Anderson about that agreed motion was on March 26th, he sent him a letter and explained to him also at that point in time that Dr. Bruckner had readied a favorable opinion, that the state was requesting an additional expert. Call me at your earliest convenience. So two days after the agreed order was entered, that was the first that Mr. McNeil sent notice to his client. And again, as this court is aware, Dr. Heaton showed up at the Department of Human Services before that letter got to Bryan Anderson at the Department of Human Services, and yet he did not cooperate with that interview. The statute also, initial trial counsels waiving Bryan Anderson's right to be present, he also violated his statutory right to be present. Under 725 ILCS 207-25C1, the very first right that respondent, subject to sexually violent persons commitment proceedings, is the right to be present, not or be represented by counsel. It's the right to be present and be represented by counsel. And again, your honors, I point to that plain language of the statute, as well as to other portions of the statute, that show that Bryan Anderson had an actual right to be there, not just be represented by counsel, who could make this decision for him about whether or not this agreed order was going to be entered or not. And the crux of all of this is this. The order that was entered created new and adverse evidence against the respondent. Ms. Fagerman, the state argues that nothing, if I understand their argument correctly, that nothing makes, none of this makes any difference, because the statutory amendment was procedural in nature, and therefore it's retroactive. How do you respond to that? Your honor, I respond with this. What can be procedural about new evidence that is adverse to your client? The plain language of the statute, and by the way, your honor, this court is aware that the law in effect at the time, March 24th, 2010, 725 ILCS 207-C1, that law had been in effect since August 20th of 2004. Beginning January 1st, 2011, the amendment was changed, that the state shall have the right to have the respondent evaluated by an expert chosen by the state. Your honor, in my brief, People v. McVeigh, which is actually a sexually dangerous person's proceeding, in that case, the respondent was arguing in an initial commitment proceeding that he had the right to an expert of his choice. The appellate court disagreed with him, said no you don't, that we presume, there is a presumption that when the court appoints an expert that's not handpicked by either side, that expert is presumed to be impartial and independent. That was not the case in this case. I submit to the court that the change was anything but merely procedural, anything but merely pro forma. The trial judge found specifically that it was a hearing, but stated in his rationale that he found that it wasn't a substantive hearing, it was merely discovery, as opposed to anything substantive in form. And as I indicated, and as I emphasize and urge this court to consider, and I will flatly just submit to the court, I would rather my client not show up for a probable cause hearing where the evidence is the state's evidence, the state's witness. The client simply is there to listen, perhaps partake, perhaps indicate to his attorney different factual deficiencies in what the expert testified to, versus the situation here, where the state handpicked and paid for an expert. And also, your honors, the record is clear in this regard. March 31st, 2010, the state filed a motion for an advancement or continuous of the trial, stating specifically that if Dr. Heaton was not allowed to testify, that he's a crucial witness, the state intends to call him, and if not allowed to testify, they would be prejudiced by his absence. The state then has conceded seven days after this agreed motion for expert was entered. That the result of the ultimate proceeding, which is the trial, could have been different. Any questions? No? Okay, thank you. Mr. McLeish, good afternoon. Good afternoon, your honors, counsel. May it please the court, I'm Brian McLeish from the Attorney General's Office on behalf of the people of the state of Illinois. This case begins and ends with the fact that at the time of trial, the people had a statutory right to present Dr. Heaton's testimony. The amendment to 207-25E was procedural. It was about discovery and the rules of evidence. And as the cases I cited in my brief suggest, procedural law encompasses pleading, evidence, and practice. It's about the machinery for carrying on a suit. So this amendment was procedural, and therefore at the time of trial, it's the current, whatever is in place at the time of trial is what controls. Let me ask you a question about the procedural versus substantive here. Yes, Your Honor. At the time that the state made its motion to have Dr. Heaton examine the respondent, anywhere in the statute did the state have the right to have an expert witness? The statute was silent on that issue. Well, aside from the DHS and DOC experts, the statute was silent on the issue. And for the purposes of this case, we have assumed and conceded that it was a matter of discretion for the trial court. So had the state, had the people presented the motion and had Respondent's Counsel not agreed to the motion, it would have been a matter of discretion to the trial judge. And there's no indication that the trial court would have denied that motion for expert. Okay. If there was no right, and the statute says that the Department of Human Service and the DOC doctors can be called by the respondent as his expert. So there is no right, it looks like, under the statute. For the state to have an expert of its own. Your Honor, it's not clear whether there's a right. The statute is silent. In ordinary civil practice, and indeed in ordinary criminal practice, the state has the right to present witnesses, including expert witnesses. But arguably, the witnesses from the DOC and the DHS are yours. In this case, at least one of them would not have been the people's witness. The DHS expert would have been, and indeed did testify on Respondent's behalf. No, but technically he was your doctor. I mean, he wasn't testifying in your favor. But both of those doctors are employed by the state. They are employed by the state. They were not called as witnesses by the state. And I think that distinction is important. I don't think it's a state witness unless the witness is called by the state. Regardless of, you know, a defense witness may give, in a criminal case, may give testimony that greatly favors the state. It's still not a state witness. Okay, what I'm trying to do is figure out for myself whether this really is a procedural or a substantive change in the law. And it seems that if the state is acquiring a right that it didn't have before, namely to have an expert of its own choice that it pays to present evidence with regard to the defendant, that it changes the character of the proceeding? It certainly is an important amendment, and it may indeed change the results of some proceedings. However, that's true of any evidentiary rule.  It allows, namely, evidence from a state-retained expert to come in. And it also has some discovery aspects because it allows the state to discover particular information from the respondent. But both of those things are procedural and very important, and they can often transform cases. But that's not the procedural substantive distinction. This is a rule that allows the state to present a certain type of evidence, and that's an evidentiary rule, and evidentiary rules are procedural. Really? It doesn't even go that far? My understanding is that all that this allows is for the state to have the right to have someone else of their choosing evaluate. And that's the discovery aspect. I mean, so... It's a discovery rule. So, yeah, we could imagine that, in theory, the state could have presented any expert it wanted. However, that expert would have been clueless because that expert wouldn't have had any access to information. So this is a discovery rule. Well, I mean, I guess maybe it ties in a little bit to maybe your misunderstanding, but the fact that, you know, the state sends someone or has the right to have this individual evaluated by Dr. Heaton doesn't determine the outcome of the evaluation. I mean, even though both the DOC and the DHS evaluator are employees of the state of Illinois, one didn't supply, I guess, the recommendation that the state was looking for. So having this statutory change just allowed for an additional evaluation, not necessarily the evidence. Because they could have had evidence presented from their own expert. Correct, Your Honor. Yes, so I think there were a couple of things there. One is, the outcome of the evaluation was not predetermined. We don't know, the state did not know at the time that it sought the motion that this expert would opine that the respondent was an SBP. It's really a discovery issue, just as if in a civil case, an ordinary civil case, one party obtains the right to conduct a deposition. The outcome of that deposition is not predetermined. However, it's an evidentiary, I'm sorry, it's a discovery right to conduct that deposition the same way it's a discovery right for the state to have an expert of its choosing conduct this evaluation. But even, so, even beyond, so, I'm sorry. Even beyond whether this is a procedural change, which it is, counsel's performance was not deficient. There are really two issues. One is whether waiving the respondent's presence was deficient, and one is whether agreeing to the motion was a deficient performance. Waiving the respondent's presence was not deficient, because this is a strategic choice that counsel's entitled to make. These are the exact types of strategy choices that the trial counsel makes. Can he waive someone's right to be present without consulting with them? It's a statutory right, and yes, he can waive, there's no case law suggesting that counsel acts on respondent's behalf, he's an agent of respondent, and he can waive a statutory right, yes. And that's the only type of right asserted here. And for the reasons outlined in our brief, there is no due process right to be present at a hearing, whether this is a hearing or not is another issue. So this is, you know, whether to agree to the motion is the type of strategic choice for counsel to make. And so counsel is also entitled then to waive respondent's presence, because counsel is the one that's going to make the determination, there's no real advantage necessarily for respondent to be there. But even more basically than that, this is not a hearing, and respondent suggests that the question about whether it's a hearing is whether it's, you know, substantive hearing or whether it's pro forma. That's not the case. If respondent had, if the assistant attorney general had telephoned respondent's counsel and said, I intend to present this motion, will you object to the motion? Is there any objection? And respondent's counsel had said no. And then the assistant attorney general had gone to the judge or filed in the clerk's office, wouldn't even have to go before the judge. The exact same motion, there's really, I don't think any argument that that's a hearing. It's just the filing of an agreed motion or an unopposed motion. So to suggest that because respondent's counsel, instead of talking on the phone, showed up in court, and the assistant attorney general presented the exact same motion, that that's all of a sudden the hearing, which compels all sorts of statutory rights, is to elevate form over substance. Second, it was not an efficient performance for counsel to agree to the motion at all. As I've noted before, there's no reason to necessarily think that counsel would have, that opposing the motion would have resulted in any victory of any kind. Second, and more importantly, trial counsel's stated purpose, one of his main stated purposes for agreeing to the motion was that he wanted to avoid trial. And he thought that if Dr. Heaton found that respondent was not an SVP, that respondent would be able to avoid trial. This was a very reasonable strategy. The odds of success at trial in these cases are low for respondent. And if counsel had a reasonable belief, and the trial court found that everything in counsel's affidavit was true, that if counsel had a reasonable belief that respondent could avoid trial, it was reasonable for counsel to pursue that strategy with full vigor, including allowing this expert. Even though the experts would have been split without Dr. Heaton's testimony, the facts for respondent were not good. You know, when he was 14, he anally penetrated a 5-year-old boy and an 8-year-old boy, he underwent treatment, and then at 24, he groomed the 14-year-old neighbor boy and engaged in oral sex with him. These are not good facts to present before a jury, so it was reasonable for counsel to try to avoid that jury trial. And counsel believed that Dr. Heaton might indeed find that respondent was not an SVP. So it was not deficient performance for him to agree to the motion. And respondent didn't raise this, but as to the commitment issue, it was not an abuse of discretion. The same facts apply. And also, respondent himself stated that treatment was ineffective, so there's no reason to think that he would have done well on conditional release, and it was not an abuse of discretion for the court to order him to be committed to secure custody. Since you brought it up, what was the nature of the horseplay? The horseplay? It's unclear exactly from the record. The respondent suggested it was very minimal. I think there was a person that respondent described as his boyfriend was in respondent's room, and there was some kind of horseplay. I'm not exactly sure the nature of the horseplay. I'm not sure that's in the record. And about the sexual misconduct, was there any evidence or any indication of violence involved in that, or was it consensual? There was no indication of violence involved in that. And yes, I believe it was consensual. Okay. Do your honors have any further questions about any of the issues? No, I have a question. I just don't know how to frame it. I can wait. I'm going back to the nature of these proceedings. I've not had a case like this before, so I'm kind of feeling my way along here. The proceedings, as I understand it, are the defendant has, the respondent has been convicted and incarcerated and he's due to be released, and the state comes in and says we have some reason to believe that he will likely reoffend when he gets out, and so we think that he needs to be kept in, but in a treatment program, not officially within the Department of Corrections. And the basis for this recommendation is some observations that have been made by the Department of Corrections people that sort of preliminarily suggest that maybe he needs to be kept locked up for an additional period of time. Is that correct? So it's roughly correct. Every sexually violent offender is evaluated by DOC. Some of those, some subsection of those, go for a formal evaluation, and that's what Dr. Arroyo performed. So this is before the probable cause hearing. Dr. Arroyo performs a full evaluation, and his opinion was that the respondent was a sexually violent person. Then it goes to a probable cause hearing where the trial court decides whether there's probable cause to pursue the SBP petition. Less than 2% of sex offenders go even to the probable cause stage. So yes, there is a substantial winnowing process. It involves a full psychological evaluation by Department of Corrections doctor. After the probable cause hearing, that's when the DHS doctor evaluates the respondent. Did that answer your question, Your Honor? Yeah, to the extent that I finished asking. I'm sorry, Your Honor. I'm sorry. No, no, that was fine. Generally, what we're dealing with is, I don't want to say speculation, because I think it's stronger than that, but some indication within the Department of Corrections that this is somebody we need to keep. And when I look at the statute, it looks like what the statute is designed to do at this stage is to evaluate the state's position, the state's basis for thinking that he's evaluated. I mean, he's dangerous or violent. At which stage, Your Honor? The commitment process. The trial, the commitment trial, okay. Yeah. And it seems to me, and I mentioned before that, it seems to me that it's changing the character of this to say that now the state can come in and bring its own additional witnesses. That it's no longer now the assessment of the people within the Department of Corrections and the defendant under the statute can have expert testimony and can use the state's experts as his witnesses as well. Now there's something added in. There's a new confrontational aspect by the state. Into this. Is that fair? No, is that a fair assessment? Is that a fair characterization of what's happening? Yeah, no, that's how I understood the question. But I understand also how you thought I understood the question. Yet, I think it's, I think it's, it allows the state evidence that it was unclear whether the state was entitled to present before. And whether that, I disagree that it changes the nature of the proceedings. It only changes, before arguably the state was, the state was only automatically entitled to present the two experts that are employed by DOC and DHS. Arguably. This allows the state to present another expert. And I don't think that changes the fundamental nature of the proceedings. What the state has to prove is the same. All of the standards are the same. The only change is whether this additional expert gets to testify. And have access to respondent to make that testimony meaningful. And that is, at its heart, that's an evidentiary rule. And it's a discovery rule. The discovery rule is the expert has access to respondent and the evidentiary rule is the expert is allowed to testify. And if you added, if you, if the statute were amended to allow respondent to, to have three court-appointed experts, or for the court to appoint three experts at respondent's request, that also would not fundamentally change the nature of the proceedings. It would change the evidence that respondent is entitled to present and the method by which he's entitled to access that evidence.  Thank you, Your Honors. We ask that the court affirm the circuit court's decision. Thank you. Darn it, I forgot to do it again. Judge Litton is the third member of our panel. He's ill and was not able to be here today. He will be listening to the tapes and participating in the conferencing of this case. So you will have a full panel who will be evaluating the arguments here. Ms. Fagerman, rebuttal. Thank you, Your Honor. Your Honor, I'd like to address a couple of the questions that were submitted to opposing counsel. First of all, counsel characterizes the legislative changes of January 1st, 2011 as essentially evidentiary or procedural changes, not substantive. And that essentially it just allows the state to present certain types of evidence. Again, I emphasize to this court, it changes the character of the evidence. It absolutely changes the character of the evidence. Under Section 207-F, statute very clearly defines what is a sexually violent person. Under 207-15, the statute very clearly indicates what the contents of the state's petition alleging that the individual, in this case Brian Anderson, is a sexually violent person. Section 207-35 very plainly indicates that the state has the burden of proving each and every one of those elements by proof beyond a reasonable doubt. The law, March 24th, 2010, the law as it is today, the statutory language under 207-35 plainly indicates that at trial, or I'm sorry, at any hearing under the Act, the state may present testimony and evidence from the Department of Human Services expert, which is the second evaluator under the Act, or the Department of Corrections evaluator, which is the first doctor under the Act. The change that occurred January 1st, 2011, again, allows the state to handpick a doctor of their choosing to evaluate the respondent, not just for purposes of evaluating the respondent, but for the sole purpose of determining whether or not he meets the criteria under the Act for commitment as a sexually violent person. The order that was entered in this case and the motion that was filed by the state specifically indicate that that is the purpose for which Dr. Keaton's appointment was made. And again, Your Honors, the court inquired of opposing counsel as to how does one initiate the sexually violent person's proceedings. A relatively recent opinion, People v. Hughes, and I do not have the citation for the court, but it is an Illinois Supreme Court opinion, which essentially indicates that when an individual is charged with a sexually violent offense, that is a term of art. Is this cited in your brief? People v. Hughes is not cited in my brief, Your Honor, but I was addressing that for the sole purpose that the Illinois Supreme Court plainly says that if you're raising this as an additional argument or additional authority, then the state would be entitled to an opportunity to file something in writing in response to it. Would you like to do that? I will have to hear what she says. Sorry, go ahead. Thank you, Your Honor. Essentially, the case was very clear to indicate that in the criminal setting, and this is a civil proceeding, a sexually violent person's case is a civil proceeding, in the criminal case, an individual convicted of a sexually violent offense, again, that is a definition that is defined under 207-5. Counsel has the obligation to tell their client that if they go to the Department of Corrections for that offense, they will be evaluated under the Sexually Violent Persons Act. And the point that I'm trying to make to Your Honors is it's not an observation by staff or it's not an observation that the person's acting out in the Department of Corrections. It's strictly if the person is convicted of a sexually violent offense as defined by the Act, they will be screened in the Department of Corrections. There is no ifs, ands, or buts that the person will be screened. Once that happens, ultimately, and this is pursuant to 207-10 of the Act, the Department of Corrections evaluator assesses the respondent to see if, in their opinion, they meet the statutory criteria. That information, if it's positive, gets forwarded on to the Attorney General's Office who then ultimately files a petition against the respondent. I disagree with opposing counsel's interpretation that their additional expert is like the Department of Human Services or the Department of Corrections evaluator in that, again, this is an expert that is handpicked and paid for by the state for purposes of determining whether they meet the statutory criteria. Finally, I disagree with opposing counsel that isn't this all just mood because as of January 1, 2011, the state had the absolute right to have an expert of their choosing evaluate the respondent. First of all, that assumes that Brian Anderson would not have had a trial before January 1, 2011 had it not been for that agreed order that was entered by the court. It wasn't until after that agreed order was entered, and I refer your honors to the record from the March 31, 2010 date where the state moved to continue or made a motion to advance the trial specifically indicating that they intended to call Dr. Heaton. This was seven days after that motion for agreed expert was entered. They let the world know by filing that motion their intent to call Dr. Heaton to testify against the respondent. And not only did they say that, they said that if they weren't allowed to call, Dr. Heaton at trial, they would be prejudiced. Does that mean that if Dr. Heaton was allowed to testify that per se, Brian Anderson is prejudiced? It does... Time's up. You can finish your sentence if you would like. It does mean, in my opinion, the state has conceded that the trial outcome would be different if Dr. Heaton had not been allowed to testify. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in recess until February. How much time would you need? Seven days. And would you like an additional seven days to respond? To reply? Yes. Thank you. We will note that in a minute order. Thank you.